

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-2008

# Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2451

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lin v. Atty Gen USA" (2008). *2008 Decisions*. Paper 894.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/894

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2451
_____

MU JIN LIN,
                    Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                    Respondent

_____

On Petition for Review of an Order of Removal
of the Board of Immigration Appeals
Agency No.  A77-340-396
Immigration Judge: Daniel A. Meisner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 25, 2008

Before:   SLOVITER, STAPLETON AND COWEN, Circuit Judges

(Opinion filed:  July 7, 2008)
_____

OPINION
_____

PER CURIAM

        Mu Jin Lin petitions for review of an order of the Board of Immigration Appeals

("BIA"), which affirmed an order issued by an Immigration Judge ("IJ") denying her

applications for asylum, withholding of removal, and protection under the Convention

Against Torture ("CAT").  We will deny the petition for review.

Lin, a native and citizen of the People's Republic of China, attempted to enter the

United States without inspection on January 19, 2001.  She was determined to be

inadmissible, and the Department of Homeland Security ("DHS") initiated removal

proceedings against her.  The IJ held a hearing on April 12, 2005, and denied Lin's

applications.  Lin appealed to the BIA, which affirmed, without opinion.

Lin testified to the following facts.  In 1995, she married Chun Au Lin and moved

into his home.  The marriage failed, and the couple eventually separated, though they

never divorced.  Lin remained in her husband's house and continued managing a noodle

shop they had started.  Lin began dating a new man, Jian An Wang, and he moved into

her home in January 2000.  In May 2000, Lin became pregnant.  Lin testified that her

neighbors were aware of this new relationship and that she was technically still married

to her husband.  Lin also testified that, although she did not apprise anyone other than

Wang, her sister, and her doctor of her pregnancy, she often vomited at her noodle shop

in plain view of her neighbors.  In June 2000, two men from the village committee

stormed Lin's residence in the middle of the night.  Lin heard one of them state, "you

with other strange men having child."  Her boyfriend awoke and told Lin to escape.  She

was injured during the escape and had a miscarriage a few days later.  Lin hid at her

sister's home for three or four months and then left China.  Lin asserted that the village

2

committee came to her residence to force her to abort her pregnancy, and that she has shown past persecution based on their actions. She also argued that she had a well-founded fear of future persecution because she left China illegally. Lin submitted a letter from her sister stating that the police had arrested Wang and confiscated Lin's home.

The IJ determined that Lin had not met her burden of showing past persecution because she had failed to show that the village committee stormed her house in order to force her to abort her pregnancy. The IJ also determined that Lin had not demonstrated a well-founded fear of future persecution, as Lin had presented no evidence that anyone in China knew that she had left illegally. For the same reason, the IJ concluded that Lin had not demonstrated that, more likely than not, she would be tortured if forced to return to China.

Lin now argues that the IJ made an adverse credibility determination, and that he made legal and factual errors by concluding that she had failed to show that the village committee caused her to suffer a miscarriage, that she had failed to demonstrate economic persecution, and that she had failed to produce corroborating documents, such as proof of pregnancy.

We have jurisdiction to review a final order of removal of the BIA under 8 U.S.C. § 1252(a)(1). When the BIA affirms the IJ's decision without opinion, we review the IJ's opinion. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). We review the IJ's determination regarding an applicant's fear of persecution under the substantial

3

evidence standard. <u>Yu v. Att'y Gen.</u>, 513 F.3d 346, 348 (3d Cir. 2008). We will not disturb factual findings unless a reasonable fact-finder would be compelled to find that the IJ erred. <u>Id</u>.

An applicant for asylum bears the burden of establishing that she is unable or unwilling to return to her home country "because of [past] persecution or well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); <u>see</u> 8 C.F.R. § 1208.13(a); <u>Abdille v. Ashcroft</u>, 242 F.3d 477, 482 (3d Cir. 2001). "The [applicant] must show by credible, direct, and specific evidence an objectively reasonable basis for the claimed fear of persecution." <u>Chen v. Ashcroft</u>, 376 F.3d 215, 223 (3d Cir. 2004).

We must reject Lin's arguments. The IJ did not make an adverse credibility determination; instead, the IJ based his decision on Lin's failure to meet her burden of proof. The IJ determined that Lin had not supported her claim that the village committee stormed her home in order to force her to abort her pregnancy. Lin testified that her neighbors could have seen her vomiting at her noodle shop, could have inferred she was pregnant, and could have notified the village committee. Lin also testified that her neighbors were aware that she was living in her husband's house with a man who was not her husband. Although Lin testified that one of the men who stormed her home stated that Lin was living with "strange men" and having a child, a reasonable fact-finder would not be compelled to conclude that the village committee stormed her house in

4

order to force her to abort her pregnancy instead of for some other reason, such as her extramarital relationship.

Lin next argues that the IJ erred by concluding that she had not suffered economic persecution on account of her opposition to forced abortions. We have recognized that severe economic punishment may constitute persecution. Li v. Ashcroft, 400 F.3d 157 (3d Cir. 2005). In Li, we held that a Chinese national suffered persecution when he was subjected to severe economic punishment for violating China's population control policies; he had been fined twenty months' salary, had lost his health benefits and had suffered the confiscation of his household furniture and appliances. In addition, Li had asserted that, "it would be impossible" for him to find other employment because the government also had blacklisted him from any government employment. Id. at 168-69.

Lin testified at the merits hearing that she could have been fined for the unauthorized pregnancy, but that she was not fined. Lin also submitted a letter from her sister stating that government officials had arrested Wang and confiscated Lin's home, but as the IJ noted, Lin presented no evidence that the government took these actions on the basis of a protected category. Finally, Lin offered no evidence that she could not have found other employment had the government confiscated her noodle shop. In light of these facts, we cannot say that a reasonable fact-finder would be compelled to

5

conclude that Lin suffered economic persecution.[1]

---

[1]Lin also asserts that the IJ impermissibly required corroboration of certain facts, such as her pregnancy. An applicant's failure to corroborate may undermine her case if: (1) the facts at issue are facts for which corroboration is reasonable to expect; (2) the applicant failed to corroborate those facts; and (3) the applicant has not adequately explained her failure to do so. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). The IJ did not analyze Lin's failure to corroborate her pregnancy under Abdulai, but he did not base his decision on her failure to corroborate her pregnancy. Instead, the IJ denied Lin's applications because she failed to demonstrate that the village committee stormed her home for a reason that would constitute persecution on account of a protected category.